Our last case this morning is Ascendis Pharma et al. v. Biomarin Pharmaceutical, 2026-1026. Mr. Bell, good morning. Good morning, Judge Laurie, and may it please the Court. Gabe Bell on behalf of the appellant, Ascendis. The district court here erred in denying a Section 1659 stay to Ascendis. Such a stay is mandatory, where, as here, there's a co-pending ITC action. Could you start with standing? Of course. Standing here is present for two reasons, Your Honor. First, it's our view, and I think supported by the record, that the ruling below is adverse to Ascendis. It denies them a procedural right that Congress provided to them in the form of certainty about a stay that extends as long as the ITC action. We think that alone is enough. Second, though, compounding that problem is the threat that Biomarin has made about seeking to pursue further litigation in short order. That just heightens the injury. But the- I guess the procedural rights, maybe they are sometimes good enough. Sometimes they are not good enough alone without more. And then here, we don't really know what the district court would do if, hypothetically, Biomarin, after an FDA approval, sought to lift the stay and maybe seek a preliminary injunction motion. So I guess I'm trying to figure out just how hypothetical or speculative is your situation. Understood, Your Honor. And that, I think, goes to the second basis for standing. Looking at the first basis for standing, the procedural error, we think simply the denial of the mandatory statutory stay is enough because it puts the threat of litigation, the scythe of Damocles, if you will, over the head of Ascendis. That, at a minimum, got mitigated by the grant of a discretionary stay. And we don't think it went far enough. We think the discretionary stay denied Ascendis the full rights to which it was entitled. I'd point the court, for example, to the Praxis case that we cited in our brief. Now, that's a Third Circuit decision. But there, the court granted a 45-day stay as a matter of discretion but denied the full 90-day stay that the statute in that case provided. And that was in a different context. It involved savings and loans and receiverships and so forth. But it's telling, I think, to me that by the time it got up onto appeal, the only issue that remained was the issue of whether that stay, although long since passed even and the litigation had settled, whether that stay was properly denied. And that's in footnote 10 of that decision. So there was a justiciable controversy there. It was framed in terms of a lack of mootness. But it's the same principle that applies here, that the mere denial of that stay, even in favor of another stay that is more limited, is enough to give adversity. It's enough to give this court jurisdiction to correct it, just as, for example, it did in. Isn't it true that that, as a practical matter, only matters if you do have some sort of consequence as a result of it being discretionary versus mandatory, right? And so then you kind of have to get into your argument that there is some sort of cloud hanging over your client or some sort of threat in the event there is approval by the FDA, right? I mean, do I understand that correctly? I think that certainly heightens the injury. But in our view, it's the simple denial of that stay that creates the cloud. So we don't have to show that they actually intend to do anything with it, although we think they do. And I think they've made that abundantly clear. And I don't think they'll get up here and say otherwise. Now, you know, hypothetically, if they got up and said, we commit here in open court not to seek to undermine the stay or do anything in district court until the ITC action is done, it would moot this case. And this court actually looked to precisely such a representation in the Grit v. Orin case, where the patentee refused to give such a representation about reinstituting litigation that had been voluntarily dismissed. This court noted in a footnote, or suggested in a footnote, that had it made that representation, that would have been enough to moot it. And we would agree that would moot this appeal entirely. But I suspect they won't get up here and do that, just as they have maintained fastidiously that they have the right to seek to lift the stay and pursue a preliminary injunction. Is February 28 still the date we're expecting to hear from the FDA? It is, yes, Your Honor. It is, as far as I know, yeah. What's the state of the ITC proceeding? The Markman hearing was on Friday. As I understand, it was continued to today. So it may be ongoing as we speak, along with a conference for scheduling. We're still far away from the initial determination. Right, the initial determination, what I have down, the target final ID date is August of this year, with a target completion date of December of this year. So we're still a fair ways away from that. To be clear, will the February 28 communication from the FDA be a thumbs up, thumbs down? What are the possibilities of what the information would be? Our hope certainly is that it's a thumbs up. But based on past experience, it could be a thumbs up, it could be a thumbs down, or it could be another wait and see for some reason. If it's thumbs up, how long would it take for Ascendus to launch? I don't know that we've officially said. I think certainly a number of weeks or months it would take to launch. Beyond that, there's things that they have to do internally. I'm not privy to all of them. But my understanding, it wouldn't be instant, but it would be relatively soon thereafter. And statements made by my friends on the other side have indicated that they think that's immediate enough for other purposes, but not for purposes of standing here. And again, all of those threats aside, which I think make abundantly clear what they intend to do, and if this court were to say, for example, there's no jurisdiction, we could be back here in seven days, 14 days, 20 days, whatever, saying, and now they have sought a preliminary injunction. And that, of course, is their CEO's stated strategy. We pointed it out in our 28-J response that their strategy is to seek to disrupt launches. So even before launch, in other contexts there, it was in the European context, but their purpose is to disrupt the launch. And we think that is their purpose here, too. We pointed that out in our opening brief, pages 13 and 18. In their responsive brief, they didn't deny. They wanted to maintain the option, right? And that option is itself what Congress sought to prohibit. And so on the merits, we think it's straightforward. I won't say clear, but we think it's straightforward as an application of the plain language that the district court must stay. It uses the word shall. It shall stay if certain conditions are met. And the district court even found those conditions were met in this case. Now, the district court then went on to say it had discretion to nonetheless deny the stay because 30 days had elapsed since the prior action. But the statute we submit is plain, that it's this action that matters, 30 days of this action, not a previously voluntarily dismissed action that starts the running of the clock. So I guess you could have had a litigation that went on for a year or two in district court and then voluntarily dismissed it and then immediately turned around and refiled and sought your 1659A right to an immediate stay? I think that's unlikely for the following reason. It's governed by the constraints of- Just trying to understand your position here. The constraints are provided by FRCP 41. So 41 gives you the right to voluntarily dismiss and it's treated as if that suit didn't exist as long as the other side didn't file an answer or didn't file a summary judgment motion. Now, here they elected to file a motion to dismiss. They could have filed an answer and we would be having a different conversation maybe in a different venue, but they elected to move to dismiss. That in turn gives the plaintiff the right under FRCP 41 to voluntarily dismiss, walk away, and perhaps file another suit or perhaps not. So there's an inherent constraint built in. I'm sorry, Your Honor. What is the difference between the two complaints? Is there a difference? So in our view, the first one was focused primarily, not solely, but primarily on the safe harbor. And so the idea was to quickly get a safe harbor ruling that could then be used to show that the ITC action shouldn't proceed. So at this point, we were importing simply for clinical purposes, is our contention. Now, they disagree. But our contention is it was for purposes of getting FDA approval. We are importing certain amounts of the prodrug, packaging it up here, sending it back off, and then to various clinical sites around the world. They, in our view, prematurely went to the ITC and wanted to try to stop that, even though it's covered, in our view, by the safe harbor. So the thought was as a matter of efficiency, we'll file a complaint narrowly targeted based on the safe harbor. Now, there was some language that was arguably a little bit broader. But in the initial paragraph, this is at appendix page 2002, we referenced safe harbor in every single of the four sentences. And we later in one of our papers mentioned that that initial complaint was narrowly targeted to safe harbor. So at a minimum, we would say there's some sort of constructive amendment to limit it to that. And then later, when we filed another complaint, it was more broadly targeted at a non-infringement declaration. We think that's neither here nor there, frankly. The district court was concerned about gamesmanship. Yes. Yes, Your Honor. The district court didn't like the optics. And I understand there's some switching of sides. The district court noted that the parties kind of swap positions to some degree. So why wouldn't judicial estoppel apply here? So judicial estoppel only applies if you get the relief you're asking for. So we did not receive the relief we're asking for. We asked. Well, first time around, you were vigorously opposing any kind of stay of the action. And you prevailed. And in fact, there was litigation that was going on for a few months. And now this time around, you're taking a position that feels clearly inconsistent in now trying to focus stay. So just to clarify, there was no ruling by the district court on that. So we didn't prevail in a judicial ruling that would in any way bind us. It was ultimately not resolved. So a hearing had been set. A hearing had not been moved forward, as we asked. And so we ultimately decided to just fight it out in the ITC. So there's no judicial estoppel that attaches to that. As to the inconsistency, I understand the optics. But the district court noted that to some degree, both parties were switching positions. And the switch on our side was simply as a matter of practicality. Once the FDA had, on June 2nd of last year, announced it would priority review our innovation, that meant it would decide it soon, as soon as November. At that point, we realized we couldn't get a ruling from the district court that would be of any judicial efficiency between June and November. And so we ultimately acceded. And we're very transparent about it. The judicial efficiency of the ITC, at what point did you realize that you probably weren't going to get a district court ruling that was faster than the ITC's ruling? Well, faster than the launch. So the problem with the ITC action is before there's a product on the market, they can't show any entitlement to prevent it from being imported. So our view was they were just relying on safe harbor items, which wouldn't have given them that entitlement. Now, if we go forward to FDA approval, and I say that to my rebuttal time, but FDA approval and then launch, then the ITC action, it doesn't go away because of the safe harbor anymore. It's just an ITC action. So our view was that they were attempting to disrupt the approval and the launch, the approval because we needed those products to help provide the FDA the data that it requires, and then beyond that, the launch. And so we were trying to do whatever we could as a company seeking to get its product out there that the FDA had deemed worthy of priority review. And so we took all the steps we could muster to do that. OK, I have a statutory interpretation question for you. It's just something I've been thinking about. I'd like to get your thoughts on it, which is that there's case law, some of which are cited in the briefing, holding that a party cannot dismiss its case and refile a new case in order to gain a procedural advantage that he or she gave up, right? And so I wonder whether Congress legislates understanding that principle. Because otherwise, whenever you have a statute that says, when a lawsuit is filed, you have so much time in which to do something, take some action, ask for a jury trial, whatever it is. In this case, it's sick to stay. Does Congress have to say, and when we say that you have to file it within 30 days of this case, that includes filing it within 30 days of this case. You can't just go ahead and dismiss this case and file a new case in order to get a procedural advantage, right? I mean, it would be kind of weird to expect Congress to have to write that in the statute every time. Well, respectfully, Your Honor, I'll look at one of the statutes that my friends pointed to on the other side. That's the removal statute. And if you look at the time frame there, it's keyed off of the, quote, initial pleading. So Congress clearly contemplated that there might be multiple pleadings and keyed the time frame off the initial pleading. And here, respectfully, Congress didn't do so. It keyed it off of the action. And the action is the current action. It refers to that antecedently when it says the district court action, so within 30 days of the district court action. If Congress had said within 30 days of the initial pleading in the action or a prior action or something like that, then certainly it could have had the same effect as the removal statute, which is section 14. Can you think of a hypothetical situation where, I mean, it's a good answer. But can you think of a hypothetical situation where the optics wouldn't look bad, but you would have this 30-day time period for a party that's filing another suit? I'm sorry, I didn't catch. The optics would not? The optics would not look bad. Congress would want to make sure there was a right to seek this stay within 30 days. So respectfully, I think a situation maybe similar to this one would fit the bill, where you have two parties vigorously fighting it out, and one side wants to prevent the other side, and the other side wants to not be prevented, where when it becomes apparent that you're not going to get the relief, then you go back and say, OK, fully transparent. Here's what we're going to do. We're going to dismiss this one and file the new one. And I think it's the right to not face the suit that is ultimately belonging to the respondent, similar to, for example, sovereign immunity for states. If you look at the biomedical case, there a state voluntarily came forward, joined itself as a plaintiff, litigated a suit, and then in a subsequent suit, it invokes state sovereign immunity. And this court said, that's fine. So there's maybe an example where the optics are a little different. And this court nonetheless said, it's fine. You didn't waive it in the prior suit. And there, the party seeking the waiver tried to broaden it to the whole subject matter, use the word subject matter or matter. And this court said, no, no, that's a different suit. And it even analogized to federal rule of civil procedure 41. So for those reasons, we think this case should also be heard by this court. We think the district court erred under the statutory language. And I'm way over my time. I apologize. You're way over your time. We'll give you two minutes for rebuttal. And if Mr. Reines needs that, he can have it. Thank you, Your Honor. Good morning, Mr. Reines. Good morning, Your Honor. May it please the court. I'd like to start at the threshold, as we must, with appellate standing and injury in fact. The allegation here is of essentially a procedural violation. And sometimes that can be enough. Sometimes that can't. Here, there's the speculation that makes this essentially an advisory opinion. And at this point, I'd like to point out that counsel said, well, if it's not taken up by the court now, it may need to be taken up by the court later. You don't get a head start, right? Jurisdiction has to be measured at the time in September when they filed it. Do you know what BioMarin would do a month from now or two months from now, assuming that the FDA approves their application? There's so many scenarios that I don't know. I certainly am not representing to the court that we wouldn't file a preliminary injunction motion. So I want to be clear about that. The way these things typically go is once a drug gets approved by the FDA and it allegedly infringes someone else's patent, the patent owner comes in and tries to stop the launch by any means necessary, including patent infringement litigation. Yeah, this case, as you may have intuit by now, is pretty different than the normal situation because we have an ITC ongoing proceeding. So there is all of whatever is happening at that time there that may get a preliminary injunction in the ITC, can you? Certainly not per se. Nothing called that. But there might be relief that the ALJ might, in other words, if the ALJ is about to issue his opinion, let's say in a month, there might be things that they could or couldn't do that might say, wait a minute, don't launch if I'm going to be deciding something. But in this case, the opinion's not close to issuing, right? Just with claim construction today, I guess. No, I think the dates that my colleague gave were correct. But as we've seen with this drug approval, this too is not a typical situation. They filed a major amendment, and we just know from their press release, a major amendment in November that caused the FDA to bump it already out three months. And I do think we have to take into account, in terms of the speculativeness, that in the submission that we made January 16, the position taken by Ascendus, point blank, was that the launch is in no way imminent given the lack of marketing authorization. And they would know, first of all, it's a statement against interest. Two, they would know better than anybody with the likelihood of it happening at all or in February. So this all goes to the speculativeness of it. Yes, you can get me to say that we might seek this relief and we're reserving the right, but no one knows how this is going to play out, and counsel acknowledge that. But their position, the Ascendus' position in court filings, is that it's in no way imminent. And that happens to be the legal standard we have here. So there's no injury in fact, no appellate standing. It's essentially an advisory opinion. What my colleague for Ascendus is saying is if the district court judge, if it's authorized, if we then move for preliminary injunction, if the district judge vacates the stay and doesn't reconsider the mooted statutory stay request, what do you think as to whether they have the right to the statutory stay? That's a lot of ifs and what's. And it's essentially an advisory opinion for a future situation that they have some concern about. But there's just far too much in speculation in all of the cases, Spokio on down, so you can't have a conjectural injury. And just the mere fact, right now they have a stay that's going to pen through the ITC unless there's a change to the status quo, it's really hard to see an appellate standing there. Counsel sidestepped the question of the violation of the final judgment rule. So they have to fill through the keyhole of a collateral order doctrine. And that's not easy. The first thing that they have to show is that the decision that's on review is conclusive. The decision that they're complaining of is a mootness decision where the judge says, you know what? I think you've misbehaved. You've engaged in gamesmanship. I'm going to decide this decision, and I'm going to moot yours. That is not conclusive. And moreover, it's not important enough for the narrow collateral order doctrine that doesn't force stay rulings to come to this court here and there because litigation is not enough. This comes up frequently. People complain of the burden of litigation. But the purpose of 1659A is to relieve people from the burden of litigation. So in this particular instance, maybe it is important. I don't think, especially Wilby Hallock is the one, I don't think it fits in the collateral order doctrine. There, what they said was that was, for government employees, qualified immunity. That's a really high order where we want to stop litigation. But we don't want the floodgates opening, the people complaining about litigation and trying to fit through the collateral order doctrine because there's all kinds of things that happen in cases where someone says, this is super important. But you, of course, as always, make a good point, which is, wait, they have no remedy? They do have a remedy. It just happens not to be that. It's not the one they selected, which was a notice of appeal that should have been DOA. It's a mandamus, as in PRINCO. And A, they didn't meet Rule 21. The Fifth Circuit has explained that there's all kinds of safeguards to Rule 21, such as notice to the district court and an opportunity to be heard at the district court. These don't happen frequently, but it's procedural safeguards. So there's procedural failure under Rule 21. But there's also the problem that there's an alternative remedy, right? It's a drastic and extraordinary remedy. All have issued many mandamus rulings. You know that better than I do. But the first question is, wait, is there another way we can resolve this so we're not having an emergency fire drill? There's a stay in place. So they have the relief they want. If the relief they want is a permanent stay that never goes away and isn't reconsidered, that's when you get back to the speculativeness. And so there's an alternative remedy. And let's just jump to the merits, because they have to show clear and undisputable. Counsel used the euphemism of optics. More than an optics problem here. Let me put you in the district judge's seat for just a little bit. A case is filed asking the district court to tell the ITC to stop their investigation, right? All kinds of comedy concerns, but that's what they asked. They submitted evidence in support of this with the original complaint and invoked something that I hadn't really appreciated. I was a little embarrassed to say, which was under the declaratory judgment statute, there's a specific provision that says, under the rule, that says you can have an expedited hearing under the declaratory judgment. So they invoked that. And they said, we want to go pursuant to this little-used provision and have an expedited trial. We have sympathies for the district court judge for the way she reacted to this refiled action seeking this statutory stay. The question is, what's the best correct understanding of this stay provision in the context of this litigation? Understood. There's just a little nuance, especially with what was added here to address the sequence of events. It is a very broad statute. So how do you respond to that? OK, I'll address the statute first. To me, this is the situation. It's not an optics question of, can you use Rule 41, which is general and broad, to nullify a congressionally enacted statute with a specific limitation? And to me, the most relevant case on the merits, to answer both of the good questions coming, is the Rust case from the Ninth Circuit. The Rust case, and you'll remember probably from your prep, that's the case where you have a certain amount of time to file a jury demand. And if you fail to, then you lose your right for a jury demand. And there was an attempt to use Rule 41 to refile. There, it's not the first pleading. It's the last pleading. And so it would- That's instructive for us, right? It's not binding on us. Well, I mean, it's not binding on you because it's factually different. So I'm not saying that there's like a precedential. Whether it's Ninth Circuit or not, I thought about- Any other cases that are like Rust? Well, there's the whole body of law on remand. Those are the 30 days that counsel came up with, which is that you have to remove the federal court from state court. You have 30 days from the complaint filing, and you can't get the new refile. But I do want to answer, having answered that, and the Rust case is like dead on. But it's not controlling. It's just not the same top. It's not controlling. I wouldn't say that. Maybe Ninth Circuit does apply. I mean, here's a district court applying her discretion on how to handle this. Anything having to do with the statute 1659 is for this court. Statutory interpretation issue. Insofar as that, that's federal circuit law. It's a statute that relates to the ITC, over which we have exclusive jurisdiction. There's no question. That's federal circuit law. My point is that to the extent we're talking about the district court's decision and the sequence of things to decide and some of the discretionary docket management stuff, that might be Ninth Circuit. What is your response to the argument that this statute, unlike others, doesn't say things like, you have to file within 30 days after the district court action is filed, the district court action. It doesn't say after, served with a complaint, or the first complaint, or some other kind of language that would make the decision like that. Good question you asked about whether the complaint's different. They refiled. So I think the action was filed once. In this case, what they did on July 7th was a refiling. And that's different. But I wanted to just discuss the sequence of events because there's a new argument, which we had never heard before, that on June 2nd, they made the decision not to pursue the district court case because of some event at the FDA that turned out to be different. I'm sorry. Related to the question I just asked you. And then you can get back to this point. Yeah, thank you. Thank you. No, no. It says here in the judge's opinion, she says, although the court finds that a sentence has met the statutory requirements in the instant action, right? Yes. That seems kind of problematic, right? In terms of what you just said, the proper statutory interpretation is. Well, I mean, there's multiple issues. First, she just mooted their motion. So she didn't decide it. So I don't think you need to reach that statutory. Well, let's say that I want to. If you want to, then I think that the fact that she says that to me doesn't move me because in the Russ case, it's a new action. It's a new pleading. It's a last pleading. All those same rules apply. What the Ninth Circuit said, it's an eloquent decision, said was, you have a general rule, and then you have a specific rule, and the specific controls over the general. And I think that applies here. You'd have to find the Russ case wrong. But going back to, if it's OK, if I can go to the sequence of events, thank you. I really appreciate that. Just going back to it, though, we've agreed that Russ is not controlling. You said I'd have to explain the case wrong, so I don't really have to, right? It's the only appellate court case you've been directed to on this question, right? Nothing from the other side. Nobody ever saying you can refile and get rid of a 30-day limit. I mean, the Congress says you have 30 days. That's it. And if you could just refile after running the district court through the ringer, which I hope to get to, then that would essentially vitiate the congressional rule. But not only that, what she did was she exercised her discretion to handle it the way she did. So I don't think she said, there's no way I'm ever applying that. She just said, I'm not rewarding your gamesmanship by deciding your motion first. First, I'm deciding this other motion, because I'm giving you the relief that you're seeking, which is a stay through to the end of the ITC action. But getting to the schedule piece, if that's OK, is now the argument is on June 2, they made the decision to get rid of the Northern District of California case because the things, the events in the FDA announced it was going to fast track their application. Yes, correct. That's not when they did it. There was multiple litigation steps in the district court. They didn't dismiss until July 7. What actually happened was they wanted to get a quick and dirty, the whole point of this was to get a quick and dirty answer from the district court to collaterally attack the ITC. And when the district court moved the hearing back a couple of times, and it was pretty clear that there wasn't a big uptake or affection for their position, they dropped it. And today is the first time they've ever come up with this other story. And the timeline doesn't work. So it's a little more than optics because the district court, they did this days before the actual hearing on their request for an expedited bench trial, which cited eight ITCD documents. They put in factual evidence. The district court definitely did all the work on that, definitely did all the, not all the work, but did preparation. There's no way they were waiting. And then on our motion to dismiss and so forth. So there's a whole lot of work that went into it. Then they dropped it. And then they came back. And they said they were refiling the same action. So I think that this situation addresses your concern on the statutory interpretation because it's very, you don't have to guess. There's not an element of speculation. Was this refiled merely to circumvent a statutory deadline? We know it was. They submitted a document saying it was. And the final point is that the district court, even regardless of what the statutory interpretation is, she, I thought, did the equitable thing as the person that's responsible for managing all these competing positions and said, look, I'm going to grant the stay. I'm going to hold this as moot. And that just seems like a reasonable thing to do. And frankly, not something we really should be second-guessing, especially on an advisory basis. Thank you very much. If there's any questions. Just on my judicial estoppel question, you agreed that the district court never made a ruling on a sentence's request to oppose a stay? That's because they pulled the case days before that hearing. So for that reason, judicial estoppel cannot work here. That's correct. I just happen to know in Ninth Circuit, that's true, I think Ninth Circuit law applies. But yeah, I believe you need the ruling in order to be able to use it that way. And then I do want to, I think I speak for the parties when I say we know you've got a lot of work and we appreciate you expediting this appeal. We don't take that lightly. Thank you. Thank you, Mr. Reines. Mr. Bell, why don't you take your three minutes if you need it. Thank you, Your Honor. I'll try to come in under that. The best I can do is return to the text of the statute. And I think that really cuts through most, if not all, of the arguments here. It's a mandatory shall. It doesn't give discretion. If you look at the House report at 160 or 141, there is discretion the district court was afforded as to stay or not stay other claims. But as to the claims provided for in the statute, it's mandatory. That's a right that is afforded to respondents in the ITC. We did not get the relief, and I can't stress this enough. We did not get the relief to which we were entitled. So they say, you've got to stay. And I heard that a lot. And I think the court is wrestling rightly so with whether that's enough. And we submit it's not enough, similar to praxis, where a stay was granted. A stay was granted and the appellant sought to challenge  What would be wrong with the decision that essentially followed the reasoning of Russ in the context of this case? So first, I'd point out that the Ninth Circuit, my friend said that Russ has not been overruled. The Ninth Circuit has expressly said in Camel just a couple of years ago, three years ago, that quote, they've never extended Russ beyond the context of Rule 39. It's a very specific context about requesting a jury right. And it does key off of the pleading. It does say the last pleading, but it keys off of the pleading. We have a different word that the statute uses here, and that's the word action. And that's the same word, I would note, that federal Rule 41 uses. And it even talks about a preceding action in the part where it talks about you can only do this once. And that's some of the built-in safeguards that 41 has. You can only voluntarily dismiss once. And in the provision that talks about that, it says if you've dismissed a previous action, then it will be with prejudice. And if you haven't, so there 41 itself distinguishes based on the word action. We have the precise same language here. And I think the statute, Congress knows what it's doing when it legislates, and it chose to do so based on the action, not some prior action. So 1659 does relieve respondents of the burden of litigating when the ITC is pending. I think the First Circuit's decision in Vicor provides a cautionary tale. In Vicor, there was precisely what we fear here, which was a preliminary injunction sought and a TRO at the same time. And before they could even get the stay, so they moved for a stay, it was denied. Before they could even get that reviewed, they were up on appeal of the preliminary injunction ruling, which was against them. And so that's what we're trying to prevent here. Because I can't read minds, but I strongly, strongly suspect that's exactly what they're going to do here. But even if that weren't what they were going to do here, the point is this. The statute provides a right. This court addressed that right in the Princo decision, obviously in the mandamus context, not collateral order doctrine. But all the cases that we found in the collateral order doctrine addressing the denial of a mandatory stay all said it was reviewable. So that's Praxis from the Third Circuit. That's the San Juan decision from the First Circuit. And they haven't poured into any where it's not reviewable. So we think for all of those reasons, the district court should be reversed. I think your bill has rung. Indeed, it has, Your Honor. And I thank the court for its time. Thank you both parties, and the case is submitted.